THOMAS, Judge.
Carolyn E. Sims appeals an order of the Mobile Circuit Court (“the circuit court”) entering summary judgment in favor of JPMC Specialty Mortgage, LLC (“JPMC”), and JPMorgan Chase Bank, N.A. (“Chase”), and denying her summary-judgment motion. We affirm in part, reverse in part, and remand.

Background

The proceedings below (“the 2013 action”) commenced with a complaint that Sims filed on February 26, 2018, in the circuit court against JPMC and other fictitiously named parties, in which she requested declaratory relief and asserted claims of trespass, trespass to chattels, and conversion. Sims’s claims related to JPMC’s entry upon certain real property (“the property”) and actions that JPMC allegedly committed after JPMC’s foreclosure upon the property in 2009. In support of her claims, Sims alleged that JPMC had lacked authority to foreclose upon the property because JPMC had not been qualified to do business in Alabama and that JPMC’s entry upon the property and disposal of certain personal property after the 2009 foreclosure had therefore been tortious.
In response, JPMC filed a motion for a summary judgment, arguing that Sims’s claims were barred by the doctrine of res judicata and because they were compulsory counterclaims that Sims had failed to assert in an ejectment action that JPMC had brought against her in 2009 (“the 2009 action”) after its foreclosure upon the property. As evidentiary support for its motion, JPMC attached as exhibits several filings and orders from the 2009 action and from another action that had been commenced by Sims’s sister, Marian A. Tipp, against JPMC, Chase, and other defendants in 2011 (“the 2011 action”). The record does not contain every filing and order from the 2009 action and the 2011 action, but the following summary of those actions has been compiled by examination of certain documents that were attached as exhibits to the parties’ filings in the 2013 action.

I. The 2009 Action

The 2009 action that JPMC referenced in its summary-judgment motion in the 2013 action was an ejectment action that it commenced in the circuit court against Sims, the mortgagor, in July 2009, seeking her removal from the property. Sims thereafter filed in the circuit court a copy of a quitclaim deed that she had already executed and recorded in the probate office, whereby she had conveyed any interest that she had had in the property to Tipp in August 2009.[1] After additional *379 filings by the parties and Tipp and after apparently receiving permission from the circuit court to do so, Tipp filed in the 2009 action a “Complaint in Intervention” in which she alleged that JPMC had lacked authority to foreclose upon the property because JPMC had not been qualified to do business in Alabama and because an assignment of the mortgage to JPMC had not been recorded in the probate office. In light of her allegations, Tipp asserted claims of wrongful foreclosure, slander of title, trespass, and trespass to chattels against JPMC in the 2009 action.
In response, JPMC filed a motion requesting, among other things, that the circuit court dismiss Tipp’s complaint in the 2009 action “[pursuant to] Rule 12(b)(6)[, Ala. R. Civ. P.], as ... Tipp ha[d] failed to state a claim ... upon which relief can be granted.” In support of its motion, JPMC argued that Tipp “lack[ed] standing”[2] to assert the claims alleged in her complaint, at least in part because any interest that Tipp had acquired via the quitclaim deed from Sims had been conveyed to Tipp after JPMC’s foreclosure upon the property and therefore JPMC’s allegedly wrongful foreclosure and its actions pursuant thereto could not have infringed upon any interest of Tipp at the time of the foreclosure.
JPMC also alleged that its acquisition of the mortgage was proper pursuant to an agreement between the Federal Deposit Insurance Corporation and JPMC’s parent company, Chase, and that Tipp had failed to offer any legal authority in support of her assertion that JPMC had been required to record the assignment of the mortgage to JPMC. JPMC also contended that it had, in fact, had “full authority to conduct foreclosures and initiate ejectment proceedings in Alabama” under federal law, contrary to Tipp’s assertions. Also relevant to this appeal is JPMC’s allegation that “[t]he true defendant, ... Sims, has already filed an [ajnswer ... with the assistance of counsel and is able to defend [JPMCJ’s ejectment claim against [her].”
Tipp filed a response in which she construed JPMC’s motion to dismiss as a summary-judgment motion and therefore argued that genuine issues of material fact existed, at least one of which, she asserted, was whether JPMC had been “the owner of record of the subject mortgage and the holder of the original promissory note thereby secured.” JPMC filed a reply in which it argued, among other things, that it had “already placed copies of the mortgage, the assignment, the executed and recorded foreclosure deed, and the demand for possession before th[e circuit court]” and that “Sims, the true defendant, ha[d] not challenged the foreclosure sale, and ... Tipp lack[ed] standing to do so.”
In July 2010, the circuit court entered an order that stated, in its entirety: “MOTION TO DISMISS PURSUANT TO RULE 12(B) filed by JPMC SPECIALTY MORTGAGE, LLC is hereby GRANTED.” (Capitalization in original.) Approximately one month later, JPMC filed a *380 motion requesting that the circuit court dismiss its ejectment claim against Sims without prejudice because the property was allegedly vacant. The circuit court entered an order granting JPMC’s motion to .dismiss the 2009 action against Sims.

II. The 2011 Action

As stated above, the 2011 action that JPMC referenced in its summary-judgment motion in the 2013 action was initiated by a complaint that Tipp had filed in 2011 Against JPMC, Chase, and other defendants in which she requested declaratory relief and asserted claims of wrongful foreclosure, slander of title, trespass, trespass' to .chattels, and fraud on the court. In support of her claims, Tipp’s complaint included several allegations of fraudulent activities by the parties named as defendants therein and allegations that JPMC had lacked authority to foreclose upon the property for a variety of reasons. JPMC, Chase, and the other defendants in the 2011 action moved for a summary judgment on Tipp’s claims, and the circuit court granted their motion. Tipp filed an appeal of the circuit court’s judgment in the 2011 action to our supreme court, and the supreme court affirmed the circuit court’s judgment, without an opinion, on October 12, 2012. See Tipp v. JPMorgan Chase Bank, N.A. (No. 1110677, Oct. 12, 2012), 166 So.3d 997 (Ala.2012)(table).
Although the record does not contain a copy of. the summary-judgment motion that -was. filed by JPMC, Chase, and the other defendants in the 2011 action and although the circuit court’s summary judgment in that case does not recite the specific basis for its determination, the record contains a , copy of the appellate brief that was'filed in the supreme court by JPMC, Chase, and the other defendants. Their brief sets out what they assert were the bases for the circuit court’s determination that a summary judgment in their favor in the 2011 action was appropriate.
In their appellate brief in the 2011 action, JPMC, Chase, and the other defendants stated:
“[The defendants] sought summary judgment on two distinct grounds. One was that [Tipp] lacked standing to challenge the foreclosure of the property at issue because her interest in the property arose only after foreclosure and the quitclaim deed to her was expressly subject to the earlier foreclosure deed. The other ground was that the claims asserted were barred by res judicata.... The trial court’s- order granting the summary judgment motion was general and not limited to the res judicata ground. Therefore, if summary judgment was proper on either ground, the trial court’s order must be affirmed. [Tipp] does not challenge on appeal the validity of a summary judgment in favor of [the] defendants on the basis of her. own lack of standing.
“In her Statement of the Issues, [Tipp ] incorrectly asserts that an issue in this case is that [the defendants] lacked standing to bring a foreclosure/ejectment action against Sims and Tipp. ’ The case on appeal here was filed by [Tipp] in 2011 and was not any sort of foreclosure/ejectment action. • A different, prior lawsuit began with a claim by [JPMC] against [Sims], the mortgagor, for ejectment following a non-judicial foreclosure. That [case] did not involve any sort of foreclosure action, and it did not involve any ejectment- action against [Tipp]. No appeal of the adjudication of that separate, prior case was filed.”
(Emphasis added.) The defendants went on to argue in their appellate brief-in the 2011 action that Tipp’s claims in the 2011 action were barred by the doctrine of res *381 judicata, in part,- because they were essentially the same' claims that she had asserted in the 2009 action, which had already been adjudicated against her. The record indicates that the proceedings in the 2011 action ended after the supreme court’s af-firmance of the circuit court’s judgment.

Ill, The 2013 Action

.In light of the proceedings summarized above, JPMC argued that it was entitled to a summary judgment in the 2013 action because, it contended, Sims’s claims were barred by the doctrine of res judicata and because they were compulsory counterclaims that Sims had failed to assert in the 2009 action. After some discovery[3] and several filings and orders pertaining to discovery, Sims filed a response to JPMC’s summary-judgment motion in which she argued, among other things, that her claims were not barred by the doctrine of res judicata because the merits of her claims against JPMC had not been adjudicated in the 2009 action and because she had not been a party to the 2011 action.
She also argued that her claims were not compulsory counterclaims in the 2009 action because they had accrued after the 2009 action had been resolved. In other words, she contended that the claims asserted in her complaint had arisen, from the alleged trespass of JPMC and the fictitiously named parties upon the property and her chattels after the 2009 action had been dismissed and, therefore, could not have been compulsory counterclaims in the 2009 action, which had already been dismissed by order of the circuit court at the time of the allegedly tortious conduct. As evidentiary support for her response, Sims also attached as exhibits various filings and orders from the 2009 action and the 2011 action.
That same day,- Sims filed a “motion to strike [JPMCj’s. motion for [a] summary judgment” in which she argued, among other things, that the circuit court had “not acquired subject[-]matter jurisdiction over JPMC’s [mjotion and claims therein because JPMC ... lack[ed] standing to make claims for affirmative relief as an unauthorized foreign corporation.” Sims’s motion went on to contend that the copy of the promissory note that had been secured by the mortgage on the property that JPMC had produced during discovery was fraudulent and contained a forged endorsement and that there were other deficiencies regarding the documents that JPMC had produced during discovery.[4]
JPMC filed a reply to Sims’s response to its summary-judgment motion that same day, again arguing that there had been a prior adjudication on the merits of Sims’s claims and that her claims were compulso *382 ry counterclaims in the 2009 action because they “revolve[d] around the validity of the ... foreclosure sale.” JPMC also contended that Sims’s claims could not have accrued after the 2009 action because, after the circuit court had granted its motions to dismiss Tipp’s complaint and its complaint against Sims, it owned the property and, therefore, its actions on the property after that time could not have been torts against Sims. The next day, JPMC filed a response to Sims’s motion to strike its summary-judgment motion, contending that the circuit court had subject-matter jurisdiction to consider its summary-judgment motion, at least in part, because it had not requested any affirmative relief and Sims had named it as a defendant in her complaint.
In October 2013, Sims filed a motion requesting that the circuit court require JPMC to deposit the original promissory note with the circuit court, and the circuit court set a hearing on Sims’s motion to be conducted on December 12, 2013. The record does not contain a transcript of the circuit court’s hearing, but it indicates that JPMC produced the “wet-ink” original promissory note for the circuit court’s inspection at the hearing.
On December 17, 2013, Sims filed an amended complaint in which she again asserted the claims set out in her original complaint. In addition to those claims, Sims also asserted claims of fraud, “money had and received,” and a violation of the “Litigation Accountability Act” against JPMC. She also asserted claims of fraud, “money had and received,” “spoliation of evidence,” and “Litigation Accountability Act violation” against Chase. In support of her claims, Sims alleged that JPMC had fraudulently misrepresented to the circuit court that it had been in possession of the promissory note when it had foreclosed upon the property (see note 3, supra). She also made similar allegations regarding Chase and alleged that Chase and JPMC had worked in concert to place a forged endorsement on the promissory note (see note 4, supra). In January 2014, JPMC and Chase filed a “supplement” to JPMC’s summary-judgment motion, in which Chase adopted JPMC’s motion for a summary judgment, and argued that Sims’s claims were barred by the doctiine of res judicata and because the claims were compulsory counterclaims that she had not raised in the 2009 action.
After additional filings by the parties, Sims filed a motion for a summary judgment in December 2014. In her motion, Sims argued that she was entitled to a summary judgment on her claims because she had made a prima facie showing that no genuine issue of material fact existed regarding her claims; because JPMC and Chase had raised the affirmative defense of res judicata for the first time in their summary-judgment motions, rather than pleading it in an answer; and because JPMC and Chase had failed to provide substantial evidence creating a genuine issue of material fact regarding her claims.
JPMC and Chase filed a response to Sims’s summary-judgment motion, arguing that her motion should be denied, at least in part, because she had presented no admissible evidence to support her allegations of forgery. JPMC and Chase attached to their response as exhibits copies of the promissory note and the mortgage in addition to an affidavit of a vice president of Chase in which the affiant averred, among other things, that JPMC had acquired the promissory note in April 2009.
Sims thereafter filed a motion to strike portions of the affidavit and the copies of the promissory note and the mortgage that had been attached as exhibits, arguing that the affiant had failed to properly authenticate those documents. JPMC and Chase *383 filed a response in which they argued, among other things, that the promissory note and the mortgage had already been authenticated and that the “wet-ink” original documents had already been provided to Sims’s attorneys and the circuit court for inspection.
On September 17, 2015, the circuit court entered an order in which it denied Sims’s pending motions, including her motion for a summary judgment, stating: “[Although the application of res judicata alone precludes summary judgment in favor of [Sims], the [circuit c]ourt has reviewed [Sims]’s motion and finds that it is also due to be denied on its merits because the motion is not supported by admissible evidence.” The circuit court also granted JPMC’s and Chase’s summary-judgment motions, stating:
“Based on the evidence and arguments presented, the [circuit cjourt finds that [SimsJ’s claims against JPMC and Chase in this case are barred by the doctrine of res judicata, as they are the same claims and causes of action that were asserted and adjudicated on their merits in the 2009 and 2011 [e]ases. [Sims] is bound by the ruling in those prior cases, even where not a named party, because she was in privity with ... Tipp due to their aligned interests. Likewise, JPMC and Chase are in privity due to their parent-subsidiary relationship. Therefore, JPMC and Chase are entitled to summary judgments] as a matter of law in their favor as to all of [Sims]’s claims against them in this case and the summary judgments are hereby GRANTED.

a

“This Order completely disposes of all claims, causes of action, and rights to relief asserted by any party in this case. Costs taxed as paid.”[5]
Sims filed a timely notice of appeal to our supreme court, and the supreme court transferred this appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
On appeal, Sims argues that the circuit court’s order should be reversed because: (1) the circuit court should not have considered the defense of res judicata because JPMC and Chase raised it as an affirmative defense in their summary-judgment motions, rather than in a responsive pleading; (2) her claims are not barred by the doctrine of res judicata; (3) the circuit court erroneously denied her summary-judgment motion, which she contends was “properly supported,” and JPMC and Chase “failed to properly controvert [her] evidence”; and (4) the circuit court failed to strike JPMC’s and Chase’s summary-judgment motions and erroneously struck the evidence that she had submitted in support of her summary-judgment motion.[6] We address each of her arguments in turn.

Standard of Review

We review the circuit court’s grant or denial of a summary-j udgment motion de *384 novo. Nelson v. Estate of Nelson, 53 So.3d 922, 927 (Ala.Civ.App.2010).
“ ‘ “A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present ‘substantial evidence’ creating a genuine issue of material fact—‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ Ala.Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).”
“ ‘Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala.1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala.2004).’
“Pritchett v. ICN Med. Alliance, Inc., 938 So.2d 933, 935 (Ala.2006).”
Smith v. Fisher, 143 So.3d 110, 122-23 (Ala.2013).

Analysis

We first consider Sims’s arguments regarding the circuit court’s grant of JPMC’s and Chase’s summary-judgment motions on the ground of res judicata. Sims argues that JPMC and Chase improperly asserted res judicata as an affirmative defense because they failed to raise it in a responsive pleading and, thus, that their summary-judgment motions should have been stricken. In response, JPMC and Chase note that they did not file answers in response to Sims’s complaint and that they therefore properly raised the doctrine of res judicata as an affirmative defense in their summary-judgment motions. In support of their argument, JPMC and Chase quote Marlow v. Mid South Tool Co., 535 So.2d 120, 125 (Ala.1988), in which our supreme court stated:
“[T]his Court has recognized that if a defendant moves for summary judgment before he files an answer, any affirmative defense argued in support of the motion for summary judgment has not been waived. Wallace v. Alabama Ass’n of Classified School Employees, 463 So.2d 135, 137 (Ala.1984). Only if an answer fails to assert an affirmative defense that is argued in a subsequently filed motion for summary judgment is the affirmative defense deemed waived.”
The record indicates that neither JPMC nor Chase filed an answer in response to Sims’s complaint or amended complaint, and instead they chose to seek a summary judgment on the ground of res judicata in their first responsive filings. Therefore, they did not waive res judicata as an affirmative defense, and the circuit court did not err by considering that defense. We cannot reverse the circuit court’s order for that reason.
Sims next argues that the circuit court erred in granting JPMC’s and Chase’s summary-judgment motions on the ground of res judicata. We agree.
“‘The elements of res judicata are “ ‘(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in *385 both actions.’ ” Chapman Nursing Home, Inc. v. McDonald, 985 So.2d 914, 919 (Ala.2007)(quoting Equity Res. Mgmt., Inc. v. Vinson, 723 So.2d 634, 636 (Ala.1998)),’
“Ex parte Chesnut, 208 So.3d 624, 635 (Ala.2016).”
Osborne v. Osborne, 216 So.3d 1237, 1240 (Ala.Civ.App.2016). Because Tipp asserted claims against JPMC in the 2009 action and claims against JPMC and Chase in the 2011 action, and because JPMC and Chase were successful in those actions against Tipp, we first consider whether the circuit court properly considered Tipp and Sims to be substantially identical parties for the purpose of applying the doctrine of res judicata.
The circuit court concluded, and JPMC and Chase argue on appeal, that JPMC and Chase were entitled to summary judgment in part because JPMC’s successful defense of the litigation initiated by Tipp in the 2009 action and the 2011 action amounted to adjudications on the merits of Sims’s claims because Sims and Tipp were in privity. In support of its determination, the circuit court stated:
“While the ‘substantial identity requirement generally requires the parties to be identical, Alabama courts recognize an exception to this rule for ‘parties in privity with a party to the prior action.’ Greene v. Jefferson County Comm’n, 13 So.3d 901, 912 (Ala.2008). The privity requirement has been summarized as follows:
“ ‘The term “privity” has not been uniformly defined with respect to res ju-dicata. The following three definitions have appeared in Alabama cases: (1) the relationship of one who is privy in blood, estate, or law; (2) the mutual or successive relationship to same rights of property; and-(3) and-identity of interest in the subject matter of litigation. Largely defining privity by example, the Alabama cases seem to resolve the question, on an ad hoc basis-in which the circumstances determine whether a person should .be bound by or entitled to the benefits of a judgment. The decision, usually turns on whether the relationship between the parties was close enough and whether adequate notice of the action was-received by .the privy; .this test has been bolstered by the recent tendency, of the Alabama courts to analyze privity as an identity of interest.’ ..
“Hughes v. Martin, 533 So.2d 188, 191 (Ala.1988)(quoting Issue Preclusion in Alabama, 32 Ala. L.Rev. 500, 520-21 (1981)). Therefore, ‘ “[a] person may be bound by a judgment even though not a party to a suit if one of the parties to the suit is so closely aligned -with his interests as to be his virtual representative.” ’ Brown v. Brown, 680 So.2d 321, 323 (Ala.Civ.App.1996)(quoting Green v. Wedowee Hosp., 584 So.2d 1309, 1315 (Ala.1991)).”
JPMC and Chase also cite Williams v. Moore, 36 So.3d 533, 540 (Ala.Civ.App.2008), for the proposition that “successors in title are in privity'with- their predecessors in title” and argue that, because Sims conveyed any interest that she had in the property to Tipp via the quitclaim deed, privity existed between Sims and Tipp and that, therefore, Sims’s claims are-barred by the doctrine of res judicata. -We-acknowledge the general principles cited by the circuit court, JPMC, and Chase in support of their conclusion that Sims and Tipp were in privity. However, we conclude that a genuine issue of material fact exists regarding whether the privity .exception to the general requirement of sub *386 stantial identity of the parties under the doctrine of res judicata has been satisfied in this case.
First, this case is distinguishable from cases like Williams, in which we concluded that a judgment that had ascertained the property rights of the parties in the earlier action precluded relitigation of those same issues with regard to their successors in interest. Id. Here, the circuit court concluded that the judgments in the 2009 action and the 2011 action regarding the claims of Tipp, the successor in interest, precluded the claims of Sims, the predecessor in interest. The distinction is important in this case because, although the record does not disclose the specific reason that the circuit court granted JPMC’s motion to dismiss Tipp’s complaint in the 2009 action or the specific reason that JPMC, Chase, and the other defendants prevailed in the 2011 action, it indicates that they consistently argued in the prior actions that Tipp’s interest in the property, namely, the interest that she acquired via the quitclaim deed after JPMC’s foreclosure upon and purchase of the property, was not identical to Sims’s interest in the property, namely, the interest that she had in the property before JPMC’s foreclosure upon and purchase of the property.
“ <«‘Privity1 is a flexible legal term, comprising several different types of relationships and generally applying when a person, although not a party, has his interests adequately represented by someone with the same interests who is a party.” ’ ” McDaniel v. Harleysville Mut. Ins. Co., 84 So.3d 106, 112 (Ala.Civ.App.2011)(quoting Jim Parker Bldg. Co. v. G & S Glass Supply Co., 69 So.3d 124, 132 (Ala.2011), quoting in turn EEOC v. Pemco Aeroplex, Inc., 383 F.3d 1280, 1286 (11th Cir.2004)). When viewed in a light most favorable to Sims, the record indicates that JPMC and Chase could have prevailed in the prior actions because the circuit court and the supreme court considered Tipp’s interest in the property to be different from Sims’s interest in the property. Thus, we conclude that a genuine issue of material fact exists regarding whether Sims’s interest in the property was adequately represented in the prior actions and that the entry of summary judgment in favor of JPMC and Chase was therefore inappropriate.
Secondarily, however, we also note that it is not apparent from the record that no genuine issue of material fact exists regarding whether there has been an adjudication on the merits of the claims asserted by Sims in the 2013 action, as is required by the doctrine of res judicata. In her appellate brief, Sims argues that the merits of her claims in the 2013 action were not adjudicated in the 2009 action because JPMC voluntarily dismissed its ejectment action against her. See Gallagher Bassett Servs., Inc. v. Phillips, 991 So.2d 697, 700 (Ala.2008)(“ ‘ “[T]he effect of a voluntary dismissal ... is to render the proceedings a nullity and leave the parties as if the action had never been brought.’” Ex parte Sealy [L.L.C.], 904 So.2d [1230] at 1236 [ (Ala.2004) ] (quoting In re Piper Aircraft Distrib. Sys. Antitrust Litig., 651 F.2d 213, 219 (8th Cir.1977))(emphasis added).”). She also asserts in her reply brief that her claims in the 2013 action were not adjudicated in the 2009 action because they are
“based on the actions of JPMC subsequent to the voluntary dismissal by JPMC of its ejectment action against her [in 2009], Sims’[s] claims against Chase in the [2013 action] are based upon Chase having placed a forged endorsement on the purported original of Sims’[s] promissory note two and one-half years after the foreclosure sale. The matter of forgery only came to light in late 2013 when Sims was finally able *387 to obtain discovery from [JPMC and Chase].... ”
JPMC and Chase state in their appellate brief:
“Defendants have not argued, and the [c]ircuit [c]ourt did not hold, that [Sims’s] claims are barred by an adjudication of JPMC’s ejectment claim against her. Instead, it is the [cjircuit [cjourt’s dismissal of the claims asserted by Tipp against JPMC for failure to state a claim that constitutes an adjudication on the merits and operates to bar her current claims.
[[Image here]]
“Because Tipp’s claims were dismissed under Rule 12(b)(6) for failure to state a claim, and because the [circuit [c]ourt’s order does not state otherwise, the dismissal of Tipp’s claims constituted an ‘adjudication upon the merits’ under Ala. R. Civ. P. 41(b). See Havis v. Marshall Co., 802 So.2d 1101, 1103 n. 2 (Ala.Civ.App.2001)(Ala.R.Civ. P. 41(b) ‘provides that all dismissals not provided for in that rule, which would necessarily include dismissals under Rule 12(b)(6), operate as adjudications on the merits.’). The [o]rder became final for purposes of appeal once the [c]ourt granted JPMC’s Motion to [dismiss the ejectment claims against Sims, which was the last remaining claim in the 2009 [c]ase.”
In so doing, JPMC and Chase argue that the 2009 action “addressed not only Tipp’s standing, but also [JPMC’s] legal standing to foreclose.”
We note that Sims’s allegations of forgery and the other claims against JPMC and Chase that she added in her amended complaint do not, on their face, appear to be analogous to the claims asserted by Tipp in the 2009 action. Furthermore, those claims appear to involve actions that JPMC and Chase allegedly committed after the 2009 action was disposed of. Therefore, it is not apparent from the record that the merits of those claims could have been adjudicated in the 2009 action.
JPMC and Chase assert that there is no genuine issue of material fact regarding whether the circuit court’s dismissal of Tipp’s complaint in 2009 action adjudicated the question of JPMC’s legal authority to foreclose upon the property.[7] However, when viewed in a light most favorable to Sims, the record does not support that assertion, which is inconsistent with the position taken by JPMC in the 2009 action and the 2011 action because it sought relief in those actions, at least in part, based on its repeated contention that the validity of its foreclosure upon the property was not being litigated in those actions. Therefore, when viewed in a light most favorable to Sims, the record indicates that a genuine issue of material fact exists regarding whether there has been a prior adjudication on the merits of Sims’s claims and, thus, whether her claims are barred by the doctrine of res judicata. Furthermore, although an appellate court may affirm a judgment of the circuit court on any valid ground, we do not consider whether summary judgment would have been appropri *388 ate on any alternative ground because there is no indication that .the circuit court intended to' base its decision to grant JPMO’s and Chase’s summary-judgment motions . on any ground other than the doctrine of' -res judicata. See Pavilion Dev., LLC v. JBJ P’ship, 979 So.2d 24, 36 (Ala.2007).
■ We next consider Sims’s argument that the circuit court erred by denying her "siimmary-judgment motion. Because the circuit court’s order disposed of all claims that were pending in the 2013 action, its denial.,of Sims’s summary-judgment motion is renewable on appeal.[8] In its order, the circuit court determined that the doctrine. of; res judicata foreclosed- summary judgment in favor of Sims. When viewed in a,light, most favorable to JPMC and Chase, we cannot say that the circuit court’s determination in that regard constitutes reversible error. As explained above, the record before this court indicates that a genuine issue of material fact exists regarding whether Sims’s claims are barred by the doctrine of res judicata. Sims was therefore not' entitled to summary judgment, and we affirm the circuit court’s denial of her summary-judgment motion.

Conclusion

■ We do not reach the merits of Sims’s underlying claims. We also do not decide whether the affirmative defense of res ju-dicata,' or another defense, would ultimately be successful against Sims’s claims. We merely hold that a genuine issue of material fact exists regarding whether Sims’s claims are barred-by the doctrine of res judicata. We must therefore reverse the portion of the circuit court’s order entering summary judgment in favor of JPMC and Chase and remand this action for further proceedings. Because we are reversing the circuit court’s order entering summary judgment in favor of JPMC and Chase and remanding this case for further proceedings, we pretermit any discussion of the remaining evidentiary arguments raised by Sims. See North Clarke Water Authority v. Dockery, 5 So.3d 634, 637 (Ala.Civ.App.2008). Finally, we affirm the circuit court’s order insofar as it denies Sims’s summary-judgment motion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
. THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. Sims also filed a "Special Power of Attorney” in which she, among other things, stated *379 that Tipp had “the full power and authority to exercise [Sims's] legal rights in all matters related to the property" and purported to give Tipp, who does not appear to have been a licensed attorney, authority to represent her in the 2009 action. The record indicates that Sims and Tipp later obtained representation of counsel in the 2009 action.

. Although the record contains several references to Tipp’s "standing,” or lack thereof, in the prior actions, we note that the issue whether those arguments would have been more properly framed as questions of real party in interest or other concepts is not before this court. See generally Ex parte BAC Home Loans Servicing, L.P., 159 So.3d 31 (Ala.2013)(discussing standing and distinguishing that concept from other concepts).

. During discovery, JPMC stated in its responses to Sims’s interrogatories that it had been in possession of the promissory note that had been secured by the mortgage on the property since April 15, 2009.

. In support of her motion, Sims attached as exhibits, among other things, two copies of the promissory note that had been provided by JPMC during discovery. She noted that they differed in that a spiral-shaped mark was absent from the verified copy but was present on the unverified copy. She also attached as an exhibit a copy of an "Exception Report” that had been produced by JPMC during discovery, arguing that the report demonstrated that JPMC "was not the holder in due course of [the promissory note] at the time of the foreclosure” because it indicated that JPMC had not obtained an endorsement of the promissory note by an executive of Ameri-quest Mortgage Company, the original mortgagee, until 2012. She also argued that the endorsement was a forgery because the Amer-iquest Mortgage Company executive who purportedly endorsed the promissory note in 2012 actually retired in 2004, and she attached as an exhibit an article from a magazine publication in which the executive's retirement was announced.

. We note that the circuit court's order did not specifically reference Sims’s claims against the fictitiously named parties listed in her complaint. However, our supreme court "has rejected the idea that an action can be commenced or survive against only fictitiously named parties. Thus, the dismissal of, or a summary judgment as to, the only named defendants in a civil action also disposes of any remaining allegations against the flcti-tiously named parties.” Johnson v. Reddoch, 198 So.3d 497, 504 (Ala.2015). Because the circuit court’s order disposed of all claims pending against JPMC and Chase, the only named defendants in the 2013 action, we conclude that the order constitutes a final judgment that properly supports Sims's appeal.

. For the sake of clarity, we have listed and addressed Sims's arguments in a different order than they appear in her appellate brief.

. JPMC and Chase’s argument appears to be based on the notion that, if the issue of the validity of JPMC’s foreclosure had already been litigated in JPMC’s favor in the 2009 action or the 2011 action, Sims would be unable to demonstrate at least one element of each of her claims in the 2013 action. That argument appears to be based on the doctrine of collateral estoppel, not the doctrine of res judicata. The record is devoid of any reference by JPMC or Chase to, and we will therefore not consider, the applicability, if any, of the doctrine of collateral estoppel to this appeal. See Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 726 (Ala.1990)(explaining the difference between the doctrines of res judicata and collateral estoppel).

. See Board of Zoning Adjustment of Trussville v. Tacala, Inc., 142 So.3d 624, 629 (Ala.Civ.App.2013)("Although the denial of a summary-judgment motion is ordinarily not appealable, our supreme court has explained that an 'appeal from a pretrial final judgment disposing of all claims in the case (as distinguished from a Rule 54(b), Ala, R. Civ. P., summary judgment disposing of fewer than all claims) entitles [the appellant], for purposes of [appellate] review, to raise issues based upon the trial court's adverse rulings, including the denial of its summary-judgment motions.’ Lloyd Noland Found., Inc. v. City of Fairfield Healthcare Auth., 837 So.2d 253, 263 (Ala.2002); see also Tanner v. State Farm Fire & Cas. Co., 874 So.2d 1058, 1066 (Ala.2003).”).